UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | No. 02 CR 50061-4 |
| ) | 03 CR 50010 |
| SIRDOUGLAS D. DISMUKE ) | Judge Philip G. Reinhard |

PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, SIRDOUGLAS D. DISMUKE, and his attorney, DAVID BROWN, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. ~~and is governed in part by Rule 11(e)(1)(C), as more fully set forth in paragraph 16, below.~~ PGR

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in the present cases. This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Plea Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Plea Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, SIRDOUGLAS D. DISMUKE, and his attorney, DAVID BROWN, have agreed upon the following:

1.   Defendant acknowledges that he has been charged in the indictment in case number 02 CR 50061-4 with armed bank robbery in violation of Title 18, United States Code, Sections 2113 (a) and (d).   Defendant also acknowledges that he has been charged in the information in 03 CR 50010 with armed bank robbery in violation of Title 18, United States Code, Sections 2113 (a) and (d).

2.   Defendant has read the charges against him contained in the indictment in 02 CR 50061-4, and in the information in 03 CR 50010, and those charges have been fully explained to him by his attorney.

3.   Defendant fully understands the nature and elements of the crimes with which he has been charged.

4.   Defendant will enter a voluntary plea of guilty to the charge contained in the indictment in 02 CR 50061-4 and to the charge contained in the information in 03 CR 50010.

5.   Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment in 02 CR 50061-4 and of the charge contained in the information in 03 CR 50010. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt.

(a)   As charged in the indictment in 02 CR 50061-4, defendant admits that on August 19, 2002, at Rockford, in the Northern District of Illinois, Western Division, he and his co-defendants, Gregory Sims (hereinafter referred to as "Sims"), and Vincent Phillips, (hereinafter referred to as "Phillips"), took by force, violence, and intimidation from the persons and presence of credit union employees, $33,400 belonging to the care, custody, control, management, and possession of Heritage Federal Credit Union, 634 North Church Street, Rockford, Illinois,

2

(hereinafter referred to as "Credit Union"), the deposits of which were then insured by the National Credit Union Administration Board. Defendant further admits that, in committing this bank robbery, he and his co-defendants, Sims and Phillips, assaulted and put in jeopardy the lives of bank employees by the use of a dangerous weapon, and that they were aided in the bank robbery by Ameca Gargani (hereinafter referred to as "Gargani").

(b) Specifically, between August 17, 2002, and August 18, 2002, defendant and co-defendants, Gargani, Sims, and Phillips, discussed robbing the Credit Union. Defendant said that he had gone into the Credit Union and described the layout of the Credit Union to Sims, Phillips, and Gargani. On August 18, 2002, defendant, Gargani, Sims, and Phillips met at Phillips' residence in Rockford, Illinois, and agreed to rob the Credit Union the following day.

On the morning of August 19, 2002, defendant and Phillips met Gargani and Sims at a park on Church Street in Rockford, Illinois. After the meeting, defendant and Phillips drove in Phillips' vehicle to a parking lot on Court Street, in Rockford, Illinois. Gargani and Sims followed Phillips' vehicle to that parking lot in a 1989 Chevy van. Defendant and Phillips got out of Phillips' car and got into the van. Gargani drove the van, with defendant, Sims, and Phillips as passengers, to the Credit Union. Gargani parked the van in front of the entrance to the Credit Union and defendant, Sims, and Phillips got out of the van and entered the Credit Union. When defendant, Sims, and Phillips entered the Credit Union, they were wearing rubber gloves and had their faces covered with masks and clothing. Defendant and Sims were both carrying BB guns that looked like real handguns.

While entering the Credit Union, one of the defendants grabbed a Credit Union customer, who was attempting to exit through the front entrance door, by the throat and forced him back inside, causing stitches on the customer's neck to open and bleed. After they entered the Credit Union,

3

defendant and Sims climbed over the teller counter and removed money from teller drawers. After Sims climbed over the teller counter, the BB gun Sims was carrying struck one of the Credit Union employees in the face. Phillips stayed in the lobby area of the Credit Union. While on the employee side of the teller counter, Sims handed Phillips his BB gun which Phillips waved around as he told the Credit Union employees and customers to get down on the ground. While standing in the Credit Union lobby, Phillips also told defendant and Sims to hurry up. After obtaining at least $33,400 in Credit Union funds from the Credit Union employees and in their presence, defendant, Sims, and Phillips left the Credit Union and re-entered the van where Gargani was waiting. Gargani drove the three men away from the Credit Union to the parking lot on Court Street where Phillips had parked his car. Defendant, Sims, and Phillips got out of the van and Gargani drove away in the van.

Phillips drove defendant and Sims to Phillips' residence in Rockford, Illinois, where he, Sims, and Phillips went to the basement and counted and divided up the money they obtained during the Credit Union robbery. Phillips told defendant to take the money wrappers from the Credit Union and flush them down the toilet in the bathroom and defendant did so. Phillips told defendant and Sims to remove their clothing and shoes and give them, along with the BB guns that were used in the robbery, to Phillips, who placed them in a garbage bag. Phillips later placed the garbage bag containing those items in the garbage outside of his house which was collected later that day. Defendant and Sims then left Phillips residence. At the time of the robbery, the deposits of Credit Union were insured by the National Credit Union Administration Board.

(c) As charged in the information in 03 CR 50010, defendant admits that on December 26, 2001, at Rockford, in the Northern District of Illinois, Western Division, knowingly aided and abetted Vincent Phillips (hereinafter referred to as "Phillips") in the taking by force,

4

violence, and intimidation from the person and presence of a credit union employee, $2,749, belonging to the care, custody, control, management, and possession of Heritage Federal Credit Union, 634 North Church Street, Rockford, Illinois, (hereinafter referred to as "Credit Union"), the deposits of which were then insured by the National Credit Union Administration Board. Defendant further admits that, in committing this bank robbery, Phillips assaulted and put in jeopardy the life of a credit union employee by the use of a dangerous weapon.

(d) Specifically, prior to December 26, 2001, defendant and Phillips discussed robbing the Credit Union. Defendant had an account at the Credit Union and entered the Credit Union on November 27, 2001, December 5, 2001, December 10, 2001, December 18, 2001, December 20, 2001, and December 24, 2001 in order to study the interior of the Credit Union. Defendant told Phillips about the observations defendant had made regarding the Credit Union. On December 26, 2001, defendant went to Phillips' residence in Rockford, Illinois. Defendant and Phillips left Phillips' residence at approximately 8:45 a.m. Defendant drove Phillips to a parking lot near the Credit Union. Defendant and Phillips discussed having defendant go into the Credit Union before Phillips. Defendant dropped Phillips off in a parking lot near the Credit Union and drove his vehicle to the Credit Union and entered it. Defendant and Phillips spoke to each other on their cellular phones. During that conversation, defendant told Phillips that he had checked out the inside of the Credit Union and it would be a good time for Phillips to enter the Credit Union and commit the robbery. Phillips then began walking to the Credit Union from the parking lot where he had been dropped off by defendant.

As defendant exited the Credit Union, Phillips entered the Credit Union. When he entered, Phillips had his face covered by a nylon and he was carrying a black revolver handgun that defendant had given to him to use in the robbery. Phillips approached a teller while holding the black revolver

5

in his hand. He gave the teller a plastic bag and told her to fill it up. After the teller placed approximately $2,749 in the plastic bag, she gave it to Phillips. Phillips left the Credit Union and ran to a location on Fisher Street where defendant came and picked him up. Defendant and Phillips went to defendant's residence where they divided the proceeds of the robbery into two equal shares. At the time of the robbery, the deposits of Credit Union were insured by the National Credit Union Administration Board.

6.  For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties agree on the following points:

(a)  Pursuant to Guideline Section 1B1.11(a), the November 1, 2002, Sentencing Guideline Manual is applicable to this case.

(b)  Pursuant to Guideline Section 2B3.1(a), the base offense level for the offense in case number 02 CR 50061-4 is level 20.

(c)  Pursuant to Guideline Section 2B3.1(b)(1), the offense level for the offense in case number 02 CR 50061-4 is increased by 2 levels because property of a financial institution was taken. As a result the offense level is 22.

(d)  Pursuant to Guideline Section 2B3.1(b)(2)(E), the offense level for the offense in case number 02 CR 50061-4 is increased by 3 levels because a dangerous weapon was brandished in the offense. As a result the offense level is 25.

(e)  Pursuant to Guideline Section 2B3.1(b)(3)(A), the offense level for the offense in case number 02 CR 50061-4 is increased by 2 levels because a victim sustained bodily injury. As a result the offense level is 27.

6

(f) Pursuant to Guideline Section 2B3.1(b)(4)(B), the offense level for the offense in case number 02 CR 50061-4 is increased by 2 levels because a person was physically restrained to facilitate the commission of the offense. As a result the offense level is 29.

(g) Pursuant to Guideline Section 2B3.1(b)(7)(B), the offense level for the offense in case number 02 CR 50061-4 is increased by 1 level because the loss exceeded $10,000. As a result the offense level is 30.

(h) Pursuant to Guideline Section 2B3.1(a), the base offense level for the offense in case number 03 CR 50010 is level 20.

(i) Pursuant to Guideline Section 2B3.1(b)(1), the offense level for the offense in case number 03 CR 50010 is increased by 2 levels because property of a financial institution was taken. As a result the offense level is 22.

(j) Pursuant to Guideline Section 2B3.1(b)(2)(C), the offense level for the offense in case number 03 CR 50010 is increased by 5 levels because a firearm was brandished in the offense. As a result the offense level is 27.

(k) Pursuant to Guidelines 5G1.2 and 3D1.4, one unit must be assigned for 02 CR 50061-4 and one unit must be assigned for 03 CR 50010, resulting in a combined offense level of 32.

(l) Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions, within the meaning of Guideline Section 3E1.1(a), a two-level reduction in the offense level is appropriate, resulting in an adjusted offense level of 30.

(m) The parties agree that defendant is not entitled to a one-level reduction in the offense level pursuant to Guideline Section 3E1.1(b) because he did not timely provide complete information to the government or timely notify authorities of his intention to plead guilty.

(n) On or about October 8, 1989, in the Circuit Court of Lee County, Illinois, in case number 89 CF 125, defendant was convicted of felony theft, and was sentenced to 90 days of imprisonment, resulting in the assignment of no criminal history points pursuant to Guideline Section 4A1.1(e)(2).

(o) On or about January 8, 1990, in the Circuit Court of Winnebago County, Illinois, in case number 89 CF 1863, defendant was convicted of burglary to a motor vehicle, and was sentenced to three years of probation and 180 days of imprisonment, resulting in the assignment of no criminal history points pursuant to Guideline Section 4A1.1(e)(2).

(p) On or about November 28, 1990, in the Circuit Court of Winnebago County, Illinois, in case number 90 CF 1152, defendant was convicted of attempted burglary to a building that was not a residence, and was sentenced to two years of imprisonment, resulting in the assignment of three criminal history points pursuant to Guideline Section 4A1.1(a).

(q) On or about January 22, 1993, in the Circuit Court of Winnebago County, Illinois, in case number 92 CF 2175, defendant was convicted of unlawful possession of a weapon by a felon, and was sentenced to three years of imprisonment, resulting in the assignment of three criminal history points pursuant to Guideline Section 4A1.1(a).

(r) On or about September 15, 1995, in the Circuit Court of Cook County, Illinois, in case number 95300617801, defendant was convicted of burglary, not involving a

residence, and was sentenced to twenty-three days of imprisonment, resulting in the assignment of one criminal history point pursuant to Guideline Section 4A1.1(c).

(s) On or about February 21, 1997, in the Circuit Court of Winnebago County, Illinois, in case number 94 CF 1589, defendant was convicted of possession of a controlled substance with intent to deliver, and was sentenced to eight years of imprisonment, resulting in the assignment of three criminal history points pursuant to Guideline Section 4A1.1(a).

(t) On or about July 16, 2002, in the Circuit Court of Winnebago County, Illinois, in case number 2000 CF 1695, defendant was convicted of forgery, and was sentenced to two and one half years of imprisonment, resulting in the assignment of three criminal history points pursuant to Guideline Section 4A1.1(a).

(u) Pursuant to Guideline Section 4A1.1(d), defendant receives 2 additional criminal points, because the instant offenses occurred while defendant was under criminal justice sentences for the convictions referenced in paragraphs 6(s) and 6(t), of this Plea Agreement.

(v) Pursuant to Guideline Section 4A1.1(e), defendant receives 1 additional criminal history point, because the instant offenses occurred less than two years after defendant's release from imprisonment for the convictions referenced in paragraph 6(s) of this Plea Agreement.

(w) Defendant and his attorney have represented that other than noted above, defendant has no other prior criminal convictions that would result in the assignment of criminal history points. Thus, based on this representation, the convictions noted above, and the facts presently known to the government, the defendant's criminal history points equal sixteen, and defendant's criminal history category is VI.

  (x) If the Court accepts the parties' Guideline calculations set forth above, the defendant's offense level after acceptance of responsibility will be 30, his criminal history category will be VI, and his sentencing guideline range will be 168-210 months of imprisonment.

  (y) The defendant, his attorney and the government acknowledge that all of the above calculations are preliminary in nature and are based on facts known to the government as of the time of this Plea Agreement. The defendant understands that the United States Probation Department will conduct its own investigation and that the court ultimately determines the facts and law relevant to sentencing, and that the court's determinations govern the final sentencing guidelines calculation. Accordingly, the validity of this Plea Agreement is not contingent upon the probation officer's or the court's concurrence with the above calculations. Defendant understands that the court is required to consider the applicable Sentencing Guidelines but may depart from those Guidelines under some circumstances.

  7. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application. The validity of this Plea Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw his plea on the basis of such corrections.

  8. Defendant understands the charges to which he will plead guilty carry the following penalties:

The charges contained in 02 CR 50061-4 and 03 CR 50010 each carry a maximum penalty of 25 years of imprisonment, a maximum fine of $250,000, and a term of supervised release of at least three years and not more than five years, which the court may specify.

Therefore, the total potential sentence carried under the charges to which defendant will plead guilty is 50 years of imprisonment, a maximum fine of $500,000, and a term of supervised release of at least 4 years and up to any number of years, including life, which the court may specify.

9. Defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $100 on each of the charges to which he has pleaded guilty, in addition to any other penalty imposed. The defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order made payable to "Clerk, U. S. District Court."

10. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial in each case. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree

11

unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(e) At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

(f) Defendant understands that he has the right to have the charge in 03 CR 50010 prosecuted by an indictment returned by a concurrence of twelve or more members of a legally constituted of not less than sixteen and not more than twenty-three members. By signing this Plea Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial, sentencing, or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

11. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences

12

of his waiver of those rights. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. ~~Defendant also is aware that 18 U.S.C. Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal or contest, under 18 U.S.C. 3742 or 28 U.S.C. Section 2255, or otherwise, his conviction and the resulting sentence, in exchange for the concessions made by the United States in this plea agreement. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or its negotiation.~~ *JeP S.P.O.O* 

12. Defendant understands that the government has the right to seek defendant's truthful testimony before a grand jury or a district court.

13. Nothing in this Plea Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from the defendant.

14. Defendant agrees that this Plea Agreement shall be filed and become a part of the record in this case. Defendant understands that this Plea Agreement is a matter of public record and may be disclosed to any party.

15. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

16. At the time of sentencing, the government will recommend that the Court impose a sentence within the applicable guideline range.

17. The parties agree that there exists no aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in

formulating the Guidelines that should result in a sentence different from the range determined by the Court. Accordingly, the parties agree not to seek or support any departure from or sentence outside of the applicable guideline range.

18. Regarding restitution, the parties acknowledge that the amount of restitution owed to Heritage Federal Credit Union is at least $33,400 for the charge contained in 02 CR 50061-4 and at least $2,749 for the charge contained in 03 CR 50010. The parties further acknowledge that pursuant to Title 18, United States Code, Section 3663A, the court must order defendant to make restitution in these amounts, minus any credit for funds repaid prior to sentencing. The defendant understands that Title 18, United States Code, Section 3664 and Sentencing Guidelines Sections 5E1.1 and 5E1.2 set forth the factors to be weighed in setting a fine and restitution in this case. The defendant agrees to provide full and truthful information to the court and United States Probation Officer regarding all details of his economic circumstances in order to determine the fine and restitution, if any, which the defendant may be ordered to pay. Defendant understands that providing false or incomplete information may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as contempt of the court.

19. Defendant understands that his compliance with each part of this Plea Agreement extends throughout and beyond the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. He further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Plea Agreement, or to resentence the defendant. The defendant understands and agrees that in the event this Plea Agreement is breached by the defendant, and the government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the

applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

20. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement, to cause defendant to plead guilty.

21. Defendant acknowledges that he has read and carefully reviewed each provision of this Plea Agreement with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Plea Agreement.

AGREED THIS DATE: 2/6/03

PATRICK J. FITZGERALD
United States Attorney

SIRDOUGLAS D. DISMUKE
Defendant

JOSEPH C. PEDERSEN
Assistant United States Attorney
308 W. State Street - Room 300
Rockford, Illinois 61101
815-987-4444

DAVID BROWN, Esq.
Attorney for Defendant
400 May Mart Drive
Rochelle, Illinois 61068
815-562-2677

No. _____ 02 CR 50061-4 _____

**UNITED STATES DISTRICT COURT**
for the
**NORTHERN DISTRICT OF ILLINOIS**
Western Division

**UNITED STATES OF AMERICA**

V

**SIRDOUGLAS D. DISMUKE**

**PLEA AGREEMENT**

Office of
**UNITED STATES ATTORNEY**
308 West State Street-Room 300
Rockford, Illinois 61101

815-987-4444